--------------------------------------------------------------------------x

MACKENZI DRAKE,

               Plaintiff,

     -against-

BLOOMIN' BRANDS, INC., OS RESTAURANT
SERVICES, LLC, and CARRABBA'S ITALIAN GRILL,
LLC,

               Defendants.

Case No.:

**<u>VERIFIED COMPLAINT</u>**

**PLAINTIFF DEMANDS A
TRIAL BY JURY**

--------------------------------------------------------------------------x

Plaintiff Mackenzi Drake ("Ms. Drake" and/or "Plaintiff"), by and through her attorneys, hereby brings this cause of action against Defendants Bloomin' Brands, Inc., OS Restaurant Services, LLC, and Carrabba's Italian Grill, LLC (collectively "Defendants"), upon information and belief as follows:

## <u>NATURE OF THE CASE</u>

1. Plaintiff brings this action alleging that Defendants have violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. and <u>Tenn. Code Ann.</u> § 4-21-401, *et seq.*, and seeks damages to redress the injuries she has suffered as a result of being discriminated against based upon her sex, subjected to unlawful sexual harassment and a hostile work environment based upon her sex, and retaliated against following her engagements in protected activity.

## <u>JURISDICTION AND VENUE</u>

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e, *et seq*. and 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over the State law claims pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in substantial part of the underlying events or omissions giving rise to Plaintiff's claims occurred.

## PROCEDURAL REQUIREMENTS

4. On November 7, 2024, Plaintiff filed a Verified Complaint with the Equal Employment Opportunity Commission ("EEOC").

5. On December 1, 2025, Plaintiff requested that the EEOC issue a Notice of Right to Sue to allow Plaintiff to pursue her claims in federal court.

6. On December 2, 2025 the EEOC issued a Notice of Right to Sue.

7. Plaintiff has filed this action within 90 days of receipt of the Notice of Right to Sue.

## PARTIES

8. At all relevant times, Plaintiff was and is a resident of Knox County, Tennessee. Defendants employed Plaintiff as a Server at Carrabba's Italian Grill in Knoxville, Tennessee.

9. At all relevant times, Defendant Bloomin' Brands, Inc. ("Bloomin' Brands") was and is a domestic corporation organized pursuant to the laws of the State of Florida with its principal place of business at 2202 North West Shore Boulevard, Suite 500, Tampa, Florida 33607.

10. At all relevant times, Defendant OS Restaurant Services, LLC ("OS Restaurant Services") was and is a subsidiary of Bloomin' Brands with its principal place of business at 2202 North West Shore Boulevard, Suite 500, Tampa, Florida 33607.

11. At all relevant times, Defendant Carrabba's Italian Grill, LLC ("Carrabba's") was and is a subsidiary of Bloomin' Brands with its principal place of business at 2202 North West Shore Boulevard, Suite 500, Tampa, Florida 33607.

12.     As noted above, Defendants employed Plaintiff at Carrabba's located in Knoxville, Tennessee.

## MATERIAL FACTS

13.     Plaintiff is a female.

14.     On October 20, 2020, Bloomin' Brands hired Ms. Drake as a Server at Carrabba's Italian Grill in Knoxville, Tennessee.

15.     Throughout her employment, Ms. Drake performed her job duties in an exemplary manner.

16.     Nevertheless, Defendants subjected Plaintiff to unlawful discrimination based upon her gender, unlawful sexual harassment and a hostile work environment, and retaliation following her engagements in protected activity when she complained about and/or opposed Defendants' unlawful employment practices.

17.     In December 2020, Ms. Drake began working on Carrabba's catering side of the business reporting to male Supervisor David Parker. From the commencement of her employment, Carrabba's male employees and managers subjected Ms. Drake to unlawful sexual harassment.

18.     In November 2021, male Line Cook Tommy LeGrande stated to Ms. Drake that he had purchased a "Fleshlight," which he stated was a "masturbation toy." In response, Ms. Drake explicitly stated that she did not want to hear about it.

19.     In December 2021, male Line Cook Charles Akins asked Ms. Drake what type of panties she was wearing that day and stated that she had a "body like a back road."

20.     In January 2022, male Server Steve Robinson repeatedly asked Ms. Drake about her sex life with her boyfriend to which Ms. Drake explicitly stated that she did not want to speak

about her personal life. Ms. Drake reported the above incidents to her supervisor Parker, who failed to address and/or ameliorate the situation.

21. In February 2022, male Line Cook Mike Brown gestured the shape of Ms. Drake's body and stated to her, "I want to split you open."

22. By March 2022, Carrabba's had promoted LeGrande to Manager. Around the same time, LeGrande encouraged Ms. Drake to sign up for Chaturbate, which was a porn website that streamed live sex acts.

23. Ms. Drake engaged in protected activity by reporting the incident to her supervisor Parker. Following her complaint, LeGrande and male Kitchen Manager Andy Johnson, who was extremely violent and regularly reminded employees that he kept firearms in his car, commenced a pattern of retaliatory actions against Ms. Drake by intentionally sabotaging her catering orders.

24. In April 2022, in response to Ms. Drake's request for sides of sauce in connection with a catering order, LeGrande inappropriately stated, "I will give it to you if you'll be my girlfriend…fuck Jason [Ms. Drake's boyfriend]." Ms. Drake asked LeGrande to stop; however, he stated that he was conducting a poll and asked Ms. Drake about her boyfriend's penis size.

25. On April 8, 2022, Ms. Drake was working on a catering order for the University of Tennessee Athletic Department. LeGrande and Johnson intentionally sabotaged the order by refusing to make half the food until over one hour after it was due.

26. Around the same time, Johnson threw a full pan of lemon butter across the kitchen at Prep Cook Lucero Perez. Notably, Johnson also regularly referred to female employees and customers as "bitches" or "cunts." Shortly after this incident, Carrabba's Joint Venture Partner Cathy Sprouse visited the location to address the Perez incident and allegedly issued Johnson a "final warning."

27. In May 2022, while she was cutting bread, male Line Cook Matthew Seffernick passed by Ms. Drake and intentionally pressed his body and genital area against Ms. Drake's backend while groaning. Ms. Drake immediately reported the incident to her supervisor Parker to no avail.

28. In August 2022, LeGrande handed Ms. Drake a piece of paper with a username on it while stating that it was his Pornhub username and suggesting that they "share videos." Male Catering Lead Artemas Pratt overheard the conversation and reported the incident to Carrabba's Joint Venture Partner Sprouse; however, Carrabba's failed to address the matter and therefore, LeGrande continued to sexually harass Ms. Drake.

29. In September 2022, Carrabba's terminated Parker's employment for using cocaine at work.

30. In October 2022, Carrabba's hired male Managing Partner Wyatt Badger, who became Ms. Drake's direct supervisor. Notably, Badger regularly used derogatory language towards female employees and customers. For example, Badger stated to Ms. Drake, "that bitch owes me money," referring to Sprouse. Badger and other male managers also regularly referred to Sprouse as a "fat bitch," said her ideas were "stupid," and openly ignored her policies and procedures due to their discriminatory animus against women.

31. In October 2022, Pratt was promoted to a corporate position, which left Ms. Drake as the new Catering Lead by default. Accordingly, Ms. Drake requested a pay increase for the new role; however, Badger refused to pay Ms. Drake the same salary that Pratt was earning.

32. Around the same time, Ms. Drake suggested using female Server Willow Weaver as a Driver. In response, her supervisor Badger explicitly stated that Willow "is the biggest bitch in the building." Additionally, male Manager Jeffrey Jackson stated, "Willow is a real cunt."

Thereafter, Badger continued to use derogatory language when speaking about female employees and customers.

33. In April 2023, Johnson aggressively stated to Ms. Drake, "Go fuck yourself" for selling a large catering order.

34. Around the same time, female Prep Cook Grayson Campbell told Ms. Drake about male Line Cook Rick regularly sexually harassing her and that she reported the sexual harassment to Badger, but nothing was done, and the harassment continued until Rick eventually quit.

35. In May 2023, Ms. Drake applied for an open Regional Catering Sales Associate position in Virginia and received an initial screening interview with Bloomin' Brands Recruiter Tanya Tateyama. Ms. Drake then learned that Carrabba's Joint Venture Partner Sprouse reported derogatory information, which she received from her supervisor Badger to the Hiring Manager about Ms. Drake and thereafter, Ms. Drake was denied a second interview. Ms. Drake then met with Sprouse regarding the denial of the role and inquired about career growth within the company. Notably, during the same time, Sprouse had hired male Manager Ryan Burke, as well as other male managers within the company.

36. On May 31, 2023, Ms. Drake spoke with Badger regarding unnecessary staff being added to the catering department and how it would negatively impact her financially. In response, Wyatt offensively stated, "You are the highest paid person in the building, and your job is not even hard…I want to add a lot of people…but you can still be the Boss Bitch."

37. On June 14, 2023, male Assistant Kitchen Manager Dustin Patch told Ms. Drake that she was "being a bitch" regarding a request to follow the recipe on the broccoli order. Ms. Drake reported the incident to Carrabba's Joint Venture Partner Sprouse.

38.     On June 16, 2023, Ms. Drake engaged in further protected activity by speaking with Senior Labor Specialist Jimmy Freeman regarding the ongoing gender discrimination and sexual harassment to which she was subjected since the commencement of her employment with Carrabba's, as well as her previous engagements in protected activity, which she noted were never addressed.

39.     On June 29, 2023, Carrabba's Joint Venture Partner Sprouse mentioned to Ms. Drake that she wanted to promote Patch to a salaried management role. Ms. Drake engaged in protected activity by opposing Sprouse's intention to promote Patch and asking why she would want to promote a person who is hostile towards women and had been arrested for domestic assault on his wife during Spring 2023. In response, Sprouse defended Patch by stating, "Oh, I think he just has an alcohol problem."

40.     Around the same time, Sprouse allegedly issued a second final warning to Johnson for telling Ms. Drake to "go fuck [herself]." However, Ms. Drake reported to Carrabba's Joint Venture Partner Sprouse that Johnson kicked an empty box in her (Ms. Drake's) direction so hard that it knocked a table over to no avail. In July 2023, Senior Labor Specialist Freeman informed Ms. Drake that Bloomin' Brands was closing the investigation into her discrimination and sexual harassment complaint, which he stated was partially corroborated, and that Sprouse would contact her to discuss the findings; however, Sprouse never followed up with Ms. Drake.

41.     Immediately thereafter, Carrabba's promoted Patch, who was one of the subjects of the investigation, to a salaried Manager position. During the last 12 years, Carrabba's has only promoted Caucasian heterosexual males to salaried manager positions with the exception of Amy Thomas, who was publicly known to be engaged in a romantic relationship with David Parker.

42. Between July 2023 and the present, Bloomin' Brands continues to subject Ms. Drake to relentless gender discrimination, sexual harassment, and retaliation. For example, following her June 2023 complaint, her supervisor Badger prohibited Ms. Drake from contacting Sprouse. Additionally, Badger was increasingly hostile towards Ms. Drake and immediately removed duties that she was assigned prior to the complaint and described her as an employee who is "always causing problems." Badger also cut off communications between Ms. Drake and customers, including deleting customer emails, intentionally failing to inform Ms. Drake about emails and phone calls from customers, and encouraging customers to use other restaurants for catering services. Johnson also engaged in retaliatory conduct by, among other things, having physically violent outburst when Ms. Drake was in his vicinity and refusing to engage with her regarding preparation of food items for catering orders.

43. Additionally, African American and Caucasian male hourly employees stated that they were going to call the focaccia bread "Nigger Bread" referring to the University of Tennessee's large population of African American student athletes. Carrabba's also excluded Ms. Drake from relevant team meetings and purposely excluded her from the end of the year celebration.

44. At the end of 2023, as a result of Bloomin' Brands' failure to ameliorate the situation, Ms. Drake was forced to reduce her discretionary hours to a minimum, which resulted in significant financial hardship.

45. In May 2024, Johnson openly promoted social media personality Andrew Tate and suggested that everyone check out his content. Notably, Tate is famous for his misogynistic beliefs and was banned from most social media platforms after tweeting that women should "bear responsibility if they are raped." After TikTok banned Tate, it publicly stated, "misogyny is a

hateful ideology that is not tolerated on TikTok." Nevertheless, Johnson continues to promote Andrew Tate within the Carrabba's workplace.

46.  On June 7, 2024, Ms. Drake engaged in further protected activity by reporting the ongoing discrimination, sexual harassment, and retaliation to which she was subjected and outlined the multiple male employees who had been promoted within Knoxville during Ms. Drake's tenure. Ms. Drake submitted this discrimination, sexual harassment, and retaliation complaint to Carrabba's then-President Pat Hafner, then-Vice President Kelia Bazile, and Market Vice President Gary Claiborne.

47.  On June 11, 2024, Senior Labor Specialist Freeman responded advising Ms. Drake that they were opening an investigation.

48.  On June 13, 2024, Market Vice President Gary Claiborne visited the store and spoke with Ms. Drake for one hour, during which he stated that the misogyny, harassment, and misconduct would end. However, nothing changed following this visit. For example, on June 28, 2024, male Line Cook Charles Akins asked Ms. Drake what type of panties she was wearing.

49.  Around the same time, Badger hired two Caucasian male employees Spencer Belanger and Frank Darwin. Since said employees would be delivering orders and receiving tips, their hiring negatively impacted Ms. Drake's pay as she would receive less money in tips. Accordingly, Defendant's actions in hiring these two individuals resulted in a decrease in Ms. Drake's salary.

50.  Notably, within three weeks of Darwin's hire, Carrabba's lost its Reliability Rockstar Status due to Darwin regularly delivering food too early or late, losing entire orders of food, and upsetting customers.

51.     Thereafter, Ms. Drake met Darwin, who stated to her, "Wyatt has told me all about you" in a condescending manner. Darwin also refused to speak with Ms. Drake about anything related to catering. Thereafter, Darwin began sending Ms. Drake inappropriate text messages late at night during non-working hours.

52.     On July 8, 2024, after Ms. Drake stepped off the ladder in the supply room, Kitchen Manager Johnson aggressively grabbed the ladder and slammed it into the wall with full force.

53.     On July 17, 2024, at 7:52 p.m., Darwin inappropriately texted Ms. Drake stating, "I'm going to guess you're republican." Notably, Ms. Drake never discussed politics at work and therefore, had no idea what Darwin was talking about. Ms. Drake then responded, "What" to which Darwin responded, "Ayn Rand-Atlas Shrugged."

54.     On July 18, 2024, Johnson intentionally entered the area where Ms. Drake was working and intensively stared at her with an angry glare in an attempt to intimidate and further harass her. On the same date, hourly employee Grayson Carroll informed Ms. Drake that she was questioned by Freeman and interrogated her regarding the questions asked by Freeman and whether she was responsible for the complaint being investigated. Carroll then immediately went to speak with Johnson, who then stated he was "going to his car," which made Ms. Drake concerned that he was going to get the gun he regularly reminds employees about. As a result of this incident, Ms. Drake feared for her physical safety and experienced severe emotional distress.

55.     On September 3, 2024, Darwin inappropriately texted Ms. Drake stating, "Sodium Hydroxide is jealous of you." In response, Ms. Drake wrote, "What do you mean?" Darwin then replied, "You have a PH of 15." Ms. Drake again responded stating, "What do you mean" to which Darwin replied, "It's telling you don't get it." Ms. Drake did not respond; however, at 7:11 pm, Darwin sent Ms. Drake another text message stating, "The boys in the crew are just waiting for

you." Ms. Drake subsequently discovered that Darwin's texts were lyrics from a Frank Zappa song "Crew Slut," which is an offensive song that begins with the lyrics, "She was sucking cock backstage at the armory in order to get a pass to see some big rock group for free."

56. On September 17, 2024, at 1:04 a.m., Darwin again inappropriately texted Ms. Drake stating,

> I have never met in my life someone more expecting entitlement than you…I've lived over half a century and you surprised me…[y]our kind of expectations puzzle me…[d]o you really believe you're worth that…[d]id Daddy buy you a BMW SUV just because he loved you…[o]r was it a repressed desire to 'love' his little girl…[d]o you think you are owed everything because you were abused…[or], more likely, you're just a little bitch.

57. Later that day, Ms. Drake forwarded Darwin's message to Vice President Claiborne, who advised that he would be flying in from Houston to visit the store on Wednesday, September 18, 2024.

58. On September 18, 2024, Defendants further retaliated against Ms. Drake by dismissing her legitimate discrimination and sexual harassment complaints and placing her under increased scrutiny. Specifically, on said date, Ms. Drake met with Clairborne, during which he dismissed her complaints. Clairborne also instructed Ms. Drake to: (1) regularly report any issues to the Managing Partner, who is the main perpetrator of the harassment; (2) have weekly or even daily meetings with Sprouse; and (3) "get her [sales] numbers up."[1] Notably, on May 7, 2024, Sprouse indicated her retaliatory animus against Ms. Drake by telling another employee that Ms. Drake could either quit or she (Sprouse) would push Ms. Drake out in response to Ms. Drake's complaints of discrimination, sexual harassment, and retaliation.

---

[1] Contrary to Clairborne's indication that Ms. Drake needs to get her sales numbers up, Ms. Drake has been ranked near or at the top of the catering rankings out of over 900 Bloomin' Brands restaurants in the nation. Ms. Drake has also been ranked first in sales in the Tennessee and Kentucky region for three consecutive years.

59. Upon information and belief, Defendants completed their investigation into Ms. Drake's complaints and simply issued written warnings to the managers for using "profanity," without addressing the fact that the profanity used by the managers was gender-degrading language.

60. On September 1, 2025, Darwin sent Plaintiff an unprompted concerning text message at 10:47 p.m. stating, "All of that, and you're a bitch." Notably, prior to receiving this text message, Plaintiff had not communicated with Darwin for approximately one year.

61. To date, Defendants continue to discriminate against Plaintiff based upon her gender, subject her to a hostile work environment, as well as retaliation due to her previous engagements in protected activity when she complained about the sexual harassment to which she was subjected and opposed Defendants' discriminatory employment practices.

62. Based upon the foregoing, Defendants subjected Plaintiff to unlawful gender discrimination, sexual harassment, and retaliation. Defendants treated Plaintiff differently as compared to similarly situated male employees and/or employees who did not engage in protected activity with respect to their terms and conditions of employment. These actions of discrimination and retaliation substantially interfered with Plaintiff's employment.

63. As a direct result of Defendant's unlawful discriminatory and retaliatory practices, Plaintiff suffered and continues to suffer significant financial ramifications, lost wages, lost benefits, humiliation, outrage, and mental anguish for which Plaintiff claims compensatory damages.

**FIRST CAUSE OF ACTION AGAINST DEFENDANTS**
**(SEX DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e)**

64. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

65. Defendants' discrimination concerned activities protected by Title VII of the Civil Rights Act of 1964, Section 2000e-2.

66. Title VII of the Civil Rights Act of 1964, Section 2000e-2, Section 703 states:

It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

67. Plaintiff is a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964, Section 2000e-2, namely Plaintiff is a female.

68. Plaintiff possessed proper qualifications for Defendants to continue her employment. Specifically, during her employment, Plaintiff was exclusively in charge of catering and had taken the location to unprecedented heights, including the restaurant's largest quarter (Q4) and period (p12) in 2022. Furthermore, out of nearly 1,000 locations nationwide, Plaintiff was number two for the year in total catering sales, direct catering sales, and YOY growth. Thereafter, Plaintiff continues to achieve positive results for Defendants through the present day.

69. As outlined herein, Defendants and/or their agents intended to discriminate against Plaintiff on the basis of her sex by subjecting her to disparate treatment in the terms and conditions of her employment as compared to similarly situated male employees. Specifically, Defendants subjected Plaintiff to disparate treatment by, among other things: failing to ameliorate the harassment and sexual harassment to which Plaintiff was subjected by her male colleagues; denying her pay raises equivalent to the raises afforded to similarly situated male employees; denying Plaintiff promotional opportunities for which she was qualified in favor of similarly situated less qualified employees; excluding Plaintiff from relevant team meetings and an end of the year celebration which were attended by her similarly situated male colleagues; constructively

reducing Plaintiff's work hours due to Defendants' failure to ameliorate the ongoing gender-based harassment and sexual harassment to which Plaintiff was subjected by her similarly situated male colleagues; reducing Plaintiff's salary by hiring two unnecessary male employees to work with Plaintiff; falsely accusing Plaintiff of pretextual performance deficiencies; and altering the terms and conditions of her employment by requiring her to attend weekly meetings on the pretextual basis that she needed to "get her sales numbers up."

70. Defendants and/or their agents subjected Plaintiff to the above-mentioned adverse employment actions due to its discriminatory animus against her based upon her gender.

71. As a direct and proximate result of Defendants' unlawful conduct in violation of 42 U.S.C. § 2000e, *et seq.,* Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

72. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of 42 U.S.C. § 2000e, *et seq.,* Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**SECOND CAUSE OF ACTION AGAINST DEFENDANTS**
**(SEX DISCRIMINATION IN VIOLATION OF TENN. CODE ANN § 4-21-401)**

73. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

74. Defendants' discrimination concerned activities protected by Title VII of the Civil Rights Act of 1964, Section 2000e-2.

75. The Tennessee Human Rights Act ("THRA") prohibits discrimination in employment. Tenn. Code Ann. § 4-21-401(a) states:

> It is a discriminatory practice in violation of this chapter for an employer to: (1) [f]ail or refuse to hire or discharge a person or otherwise discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race, creed, color, religion, sex, age, or national origin.

76. Plaintiff is a member of a protected class pursuant to Tenn. Code Ann. § 4-21-401(a), namely Plaintiff is a female.

77. Plaintiff possessed proper qualifications for Defendants to continue her employment. Specifically, during her employment, Plaintiff was exclusively in charge of catering and had taken the location to unprecedented heights, including the restaurant's largest quarter (Q4) and period (p12) in 2022. Furthermore, out of nearly 1,000 locations nationwide, Plaintiff was number two for the year in total catering sales, direct catering sales, and YOY growth. Thereafter, Plaintiff continues to achieve positive results for Defendants through the present day.

78. As outlined herein, Defendants and/or their agents intended to discriminate against Plaintiff on the basis of her sex by subjecting her to disparate treatment in the terms and conditions of her employment as compared to similarly situated male employees. Specifically, Defendants subjected Plaintiff to disparate treatment by, among other things: failing to ameliorate the harassment and sexual harassment to which Plaintiff was subjected by her male colleagues; denying her pay raises equivalent to the raises afforded to similarly situated male employees; denying Plaintiff promotional opportunities for which she was qualified in favor of similarly situated less qualified employees; excluding Plaintiff from relevant team meetings and an end of the year celebration which were attended by her similarly situated male colleagues; constructively reducing Plaintiff's work hours due to Defendants' failure to ameliorate the ongoing gender-based

harassment and sexual harassment to which Plaintiff was subjected by her similarly situated male colleagues; reducing Plaintiff's salary by hiring two unnecessary male employees to work with Plaintiff; falsely accusing Plaintiff of pretextual performance deficiencies; and altering the terms and conditions of her employment by requiring her to attend weekly meetings on the pretextual basis that she needed to "get her sales numbers up."

79. Defendants and/or their agents subjected Plaintiff to the above-mentioned adverse employment actions due to its discriminatory animus against her based upon her gender.

80. As a direct and proximate result of Defendants' unlawful conduct in violation of Tenn. Code Ann. § 4-21-401(a), Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

81. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Tenn. Code Ann. § 4-21-401(a), Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

### THIRD CAUSE OF ACTION AGAINST DEFENDANTS
### (HOSTILE WORK ENVIRONMENT IN VIOLATION OF 42 U.S.C. § 2000e)

82. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

83. Defendants' discrimination concerned activities protected by Title VII of the Civil Rights Act of 1964, Section 2000e-2.

84. Under Title VII, a hostile work environment claim arises when an employee, due to their membership in a protected class, is subjected to workplace conduct that is severe or pervasive enough to create an abusive atmosphere for the employee.

85. Plaintiff is a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964, Section 2000e-2, namely Plaintiff is a female.

86. Plaintiff possessed proper qualifications for Defendants to continue her employment. Specifically, during her employment, Plaintiff was exclusively in charge of catering and had taken the location to unprecedented heights, including the restaurant's largest quarter (Q4) and period (p12) in 2022. Furthermore, out of nearly 1,000 locations nationwide, Plaintiff was number two for the year in total catering sales, direct catering sales, and YOY growth. Thereafter, Plaintiff continues to achieve positive results for Defendants through the present day.

87. As thoroughly outlined herein, Defendants and/or their agents subjected Plaintiff to unlawful harassment and sexual harassment due to her gender. The harassment and sexual harassment to which Plaintiff was subjected by Defendants was clearly unwelcomed and/or unsolicited by Plaintiff. The harassment to which Plaintiff was subjected by Defendants was severe or pervasive enough to alter the conditions of Plaintiff's employment, and Plaintiff perceived the work environment to be hostile. Furthermore, a reasonable person in Plaintiff's position would find the harassment offensive.

88. Defendants knew or should have known about the harassment as Plaintiff filed multiple internal and external complaints.

89. Defendants failed to take appropriate action by failing to promptly and thoroughly investigate the matter and/or ameliorate the situation. Defendants required Plaintiff to continue working in the hostile work environment with her harassers for an extended period of time.

Case 3:26-cv-00082-TAV-DCP    Document 1    Filed 02/26/26    Page 17 of 25    PageID #: 17

90. As a direct and proximate result of Defendants' unlawful conduct in violation of 42 U.S.C. § 2000e, *et seq.,* Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

91. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of 42 U.S.C. § 2000e, *et seq.,* Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**FOURTH CAUSE OF ACTION AGAINST DEFENDANTS**
**(HOSTILE WORK ENVIRONMENT IN VIOLATION OF**
**TENN. CODE ANN. § 4-21-401)**

92. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

93. Defendants' discrimination concerned activities protected by Tenn. Code Ann. § 4-21-401(a).

94. Tenn. Code Ann. § 4-21-401(a)(1) applies to claims of discrimination based upon the existence of a hostile work environment.

95. Under Tenn. Code Ann. § 4-21-401(a)(1), hostile work environment harassment occurs where the conduct has the purpose or effect of unreasonably interfering with an employee's work performance or creating an intimidating, hostile, or offensive working environment.

96. Plaintiff is a member of a protected class pursuant to Tenn. Code Ann. § 4-21-401(a)(1), namely Plaintiff is a female.

97.     Plaintiff possessed proper qualifications for Defendants to continue her employment. Specifically, during her employment, Plaintiff was exclusively in charge of catering and had taken the location to unprecedented heights, including the restaurant's largest quarter (Q4) and period (p12) in 2022. Furthermore, out of nearly 1,000 locations nationwide, Plaintiff was number two for the year in total catering sales, direct catering sales, and YOY growth. Thereafter, Plaintiff continues to achieve positive results for Defendants through the present day.

98.     As thoroughly outlined herein, Defendants and/or their agents subjected Plaintiff to unwelcomed harassment and sexual harassment because of Plaintiff's gender, which affected a term, condition, or privilege of Plaintiff's employment.

99.     Defendants and/or their agents knew or should have known of the harassment as Plaintiff submitted multiple internal and external complaints about the relentless gender-based harassment and sexual harassment to which she was subjected by Defendants' male employees.

100.    After learning about the gender-based harassment and sexual harassment to which Plaintiff was subjected, Defendants failed to take prompt and remedial corrective action.

101.    As a direct and proximate result of Defendants' unlawful conduct in violation of Tenn. Code Ann. § 4-21-401(a), Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

102.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Tenn. Code Ann. § 4-21-401(a), Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**FIFTH CAUSE OF ACTION AGAINST DEFENDANTS**
**(RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e-3)**

103.    Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

104.    Title VII prohibits discrimination and retaliation.

105.    Title VII of the Civil Rights Act of 1964, Section 2000e-3(a) states:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

106.    Defendants' employment practices as alleged at length herein constitute an impermissible act of retaliation in violation of Title VII. The stated reasons for Defendants' conduct were not the true reasons but served as a pretext to conceal Defendants' retaliatory animus against Plaintiff.

107.    Plaintiff engaged in protected activity by filing multiple internal complaints throughout 2023, 2024, and 2025, regarding the unlawful sex discrimination and sexual harassment to which she was subjected.

108.    Defendants were aware of Plaintiff's engagements in protected activity as Plaintiff complained directly to Defendants' management and Human Resources office. Plaintiff also filed a Charge of Discrimination with the EEOC to which Defendants responded.

109.    As fully demonstrated within this Complaint, Defendants engaged in a course of retaliatory and adverse conduct against Plaintiff by, among other things: denying her promotional opportunities for which she was qualified, subjecting her to increased scrutiny and pretextual

performance-related accusations, and failing to ameliorate her legitimate gender discrimination and sexual harassment complaints thereby further subjecting her to a hostile work environment.

110. Plaintiff's engagements in protected activity caused Defendants to take the above adverse employment actions against her.

111. Defendants took these adverse actions shortly after each of Plaintiff's engagements in protected activity.

112. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, § 2000e-3, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which she is entitled to an award of monetary damages and other relief.

113. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, § 2000e-3, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem, and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

### SIXTH CAUSE OF ACTION AGAINST DEFENDANTS
### (RETALIATION IN VIOLATION OF TENN. CODE ANN. § 4-21-301)

114. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

115. Tenn. Code Ann. § 4-21-301 prohibits retaliation.

116. Tenn. Code Ann. § 4-21-301(a) states:

It is a violation of this chapter for a person to retaliate or discriminate against another person because such person has opposed a discriminatory practice in violation of this chapter or because such person has made a charge, filed a

complaint, testified, assisted or participated in an investigation, proceeding, or hearing under this chapter.

117. Defendants' employment practices as alleged at length herein constitute an impermissible act of retaliation in violation of Tenn. Code Ann. § 4-21-301(a). The stated reasons for Defendants' conduct were not the true reasons but served as a pretext to conceal Defendants' retaliatory animus against Plaintiff.

118. Plaintiff engaged in protected activity by filing multiple internal complaints throughout 2023, 2024, and 2025, regarding the unlawful sex discrimination and sexual harassment to which she was subjected.

119. Defendants were aware of Plaintiff's engagements in protected activity as Plaintiff complained directly to Defendants' management and Human Resources office. Plaintiff also filed a Charge of Discrimination with the EEOC to which Defendants responded.

120. As fully demonstrated within this Complaint, Defendants engaged in a course of retaliatory and adverse conduct against Plaintiff by, among other things: denying her promotional opportunities for which she was qualified, subjecting her to increased scrutiny and pretextual performance-related accusations, and failing to ameliorate her legitimate gender discrimination and sexual harassment complaints thereby further subjecting her to a hostile work environment.

121. Plaintiff's engagements in protected activity caused Defendants to take the above adverse employment actions against her.

122. Defendants took these adverse actions shortly after each of Plaintiffs' engagements in protected activity.

123. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Tenn. Code Ann. § 4-21-301(a), Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income,

compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

124. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Tenn. Code Ann. § 4-21-301(a), Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem, and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**WHEREFORE,** Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, *et seq.*, and Tenn. Code Ann. § 4-21-401, *et seq.,* by discriminating against Plaintiff on the basis of her gender, subjecting Plaintiff to a hostile work environment and sexual harassment, and retaliating against Plaintiff following her engagements in protected activity;

B. Awarding damages to Plaintiff, resulting from Defendants' discriminatory and retaliatory actions and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practice.

C. Awarding Plaintiff compensatory damages for lost wages, mental, emotional, and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of this action; and

Case 3:26-cv-00082-TAV-DCP    Document 1    Filed 02/26/26    Page 23 of 25    PageID #: 23

F.       Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices.

**CORNELIUS & COLLINS, LLP**

*s/ Victoria L. Rohloff*
Victoria L. Rohloff     (TN Bar No. 40310)
211 Athens Way, Suite 200
Nashville, TN 37228
(615) 244-1440
vlrohloff@cclawtn.com

And

**WHITE, ROSE & HILFERTY P.C.**

*s/ Michael P. Hilferty*
Michael P. Hilferty (*Pro Hac Vice* pending)
Samantha E. Hudler ( *Pro Hac Vice* pending)
757 Third Ave., 20th Floor
New York, New York 10017
(917) 633-5760
(917) 565-8763

*Attorneys for Plaintiff*

Case 3:26-cv-00082-TAV-DCP     Document 1     Filed 02/26/26     Page 24 of 25     PageID #: 24

-------------------------------------------------------------------X

MACKENZI DRAKE,

Plaintiff,

Case No.:

-against-

VERIFICATION

BLOOMIN' BRANDS, INC., OS RESTAURANT
SERVICES, LLC, and CARRABBA'S ITALIAN GRILL,
LLC,

Defendants.

-------------------------------------------------------------------X

**MACKENZI DRAKE**, pursuant to the provisions of 28 U.S.C. 1746, declares the following under penalty of perjury that the foregoing is true and correct:

1.      I am the Plaintiff herein.

2.      I have read the foregoing Complaint and know the content thereof, that the same is of my own knowledge except as to the matters therein stated upon information and belief; and that as to those matters, I believe the same to be true.

Executed:     Knoxville , Tennessee
              January 14, 2026

_____
MACKENZI DRAKE

BRIDGETT NICOLE BEARD
STATE OF TENNESSEE
NOTARY PUBLIC
KNOX COUNTY
My Commission Expires 08-28-2029

Page 25 of 25